**Ali Saleh Kahlah AL–MARRI, Petitioner,**

v.

**George W. BUSH, President of the United States of America, Donald H. Rumsfeld, United States Secretary of Defense, and M.A. MARR, Commander, Naval Consolidated Brig, Charleston, South Carolina, Respondents.**

No. 03–1220.

United States District Court, C.D. Illinois, Peoria Division.

Aug. 1, 2003.

L. Lee Smith, Hinshaw & Culbertson, Peoria, IL, Mark A. Berman, Lawrence S. Lustberg, Michael A. Baldassare, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Petitioner.

Jan Paul Miller, United States Attorney, Springfield, IL, David B. Salmons, U.S. Department of Justice, Office of the Solicitor General, Washington, DC, for Respondents.

Morton Sklar, World Organization Against Torture, USA, Washington, DC, for World Organization Against Torture, USA Amicus Curiae, by special leave of the Court, supporting the Petitioner.

Bruce D. Locher, Springfield, IL, for National Association of Criminal Defense

Lawyers, Amicus Curiae, by special leave of the Court, supporting the Petitioner.

### ORDER

MIHM, District Judge.

This matter is now before the Court on Petitioner, Ali Saleh Kahlah Al–Marri's ("al-Marri"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and the Government's Motion to Dismiss. For the reasons set forth below, the Motion to Dismiss [# 7] is GRANTED.

### BACKGROUND

Al–Marri is a Qatari national who legally entered the United States on September 10, 2001, with his wife and children. He had previously obtained a bachelor's degree from Bradley University in Peoria, Illinois, in the early 1990s, and was returning to the United States to obtain a master's degree from Bradley.

On December 12, 2001, al-Marri was arrested by FBI agents in Peoria at the direction of the U.S. Attorney's Office for the Southern District of New York as a material witness in the investigation of the September 11, 2001, terrorist attacks. He was then transferred to New York City.

Al–Marri was formally arrested on a criminal complaint charging him with credit card fraud on January 28, 2002. On February 6, 2002, he was indicted and charged with possession of 15 or more unauthorized or counterfeit access devices with intent to defraud in the United States District Court for the Southern District of New York. He pled not guilty, and the case followed the normal course of litigation. On January 22, 2003, al-Marri was charged in a second indictment with two counts of making a false statement to the FBI, three counts of making a false statement in a bank application, and one count of using a means of identification of another person for purposes of influencing the action of a federally insured financial institution. He also entered a plea of not guilty to the second indictment and succeeded in having the two indictments consolidated.

Al–Marri initially waived any objection to venue in the Southern District of New York, but later withdrew his waiver after obtaining new counsel. He then moved to dismiss the indictments on grounds of improper venue. On May 12, 2003, al-Marri's motion was granted and the indictments were dismissed for improper venue. However, a new criminal complaint had been filed under seal in this district on May 1, 2003, and al-Marri was arraigned on that complaint on May 13, 2003. He was then transferred back to Peoria, where a grand jury indicted him on the same counts that had been charged in the two indictments in the Southern District of New York. Al–Marri was arraigned and a pretrial conference was set for July 2, 2003, with a jury trial to begin on July 21, 2003.

On June 23, 2003, President Bush designated al-Marri as an enemy combatant and directed that he be transferred to the control of the Defense Department for detention. That same morning, the U.S. Attorney's Office moved to dismiss the indictment with prejudice, and the motion was granted. Al–Marri's counsel then requested that the Court stay the case to prevent any attempt to transfer him from the jurisdiction until he could file a habeas petition. However, the Court determined that as the case had been dismissed with prejudice, it lacked jurisdiction to issue any type of a stay. The Court did obtain the U.S. Attorney's agreement to inform counsel of the location to which al-Marri was to be moved, and counsel has been so advised. The U.S. Attorney also agreed to provide both the Court and al-Marri's counsel with advance notice if al-Marri was going to be moved to any location

outside of the United States so that counsel could seek an emergency injunction in the appropriate court. Al–Marri was then immediately transferred into military custody and transported to the Naval Consolidated Brig in Charleston, South Carolina, where he continues to be held.

On July 8, 2003, al-Marri's counsel filed the present § 2241 Petition on his behalf, as it is undisputed that al-Marri is unavailable to sign it for himself. In response, the Government moved to either dismiss or transfer the Petition to the District of South Carolina, raising essentially three arguments: (1) the Petition has not been properly brought on al-Marri's behalf; (2) no proper respondent with custody over al-Marri is present within this Court's territorial jurisdiction; and (3) venue over the action appropriately lies in South Carolina, where he is detained. On July 28, 2003, the Court held oral arguments, and this Order follows.

## DISCUSSION

■ A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a defendant is challenging the fact or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir.1994). The writ of habeas corpus may be granted where the defendant is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. 2241(c)(3). Al–Marri's ability to pursue relief pursuant to § 2241 is essentially undisputed. What is disputed is the forum in which he should pursue such relief.[1]

■ Section 2243 provides that any writ of habeas corpus that shall issue "shall be directed to the person having custody of the person detained" and that person "shall be required to produce at the hearing the body of the person detained." 28 U.S.C. § 2243. Moreover, it is generally established that the proper respondent in a habeas petition is the detainee's immediate custodian. *See Wales v. Whitney,* 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885) (noting that the provisions of the habeas corpus statute "contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary"). The Seventh Circuit has followed this view, noting that "[t]he custodian, in most cases, 'is the person having a day-to-day control' over the petitioner, because he 'is the only one who can produce the body of the petitioner.' " *Samirah v. O'Connell,* 335 F.3d 545, 2003 WL 21507968, at *5 (7th Cir.2003), *citing Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986). The only noted exceptions to this general rule involved limited circumstances where the prisoner was being held abroad and there was no domestic forum where the prisoner's custodian was present or where the prisoner was being held at an undisclosed location, neither of which apply in the present case. *Id.; Demjanjuk v. Meese,* 784 F.2d 1114, 1115–16 (D.C.Cir.1986). From this line of cases, the Government argues that the Court should not entertain the Petition, as it must be brought in South Carolina, where Commander Marr, al-Marri's day-to-day custodian, is located.

Al–Marri cites *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), for the proposition that a federal district court

---

1. Although the Government asserts several bases for the dismissal of al-Marri's Petition, each of the bases need not be addressed in resolving the motion, as the Court finds the issue of venue to be dispositive.

has the power to consider a detainee's § 2241 petition so long as the court's process can reach the named respondents. In *Braden*, the Supreme Court took a step back from *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), which suggested that the prisoner's presence within the territorial confines of the district was an invariable prerequisite to the exercise of a district court's habeas jurisdiction. 93 S.Ct. at 1130. *Ahrens* involved habeas petitions filed by 120 German nationals confined at Ellis Island, New York, pending deportation in which they argued that the statutory removal orders issued by the INS exceeded the President's authority under the Alien Enemy Act of 1789. 68 S.Ct. at 1443. The petitions were filed in the District Court for the District of Columbia, naming the Attorney General as the respondent. *Id.* at 1443–44. The Supreme Court found that the words "within their respective jurisdictions" in the habeas corpus statute limited district court jurisdiction to inquiries into cases brought by those confined or restrained within the territorial jurisdiction of each court. *Id.* at 1444.

In distancing itself from *Ahrens'* inflexible rule, the Supreme Court noted developments in the law since *Ahrens* was decided and criticized a construction that dictated the choice of an inconvenient forum even if the type of case at issue could not have been foreseen at the time of the decision. *Id.* at 1132. Nevertheless, while the Supreme Court did indicate that "[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction,'" it later deferred to traditional principles of venue in noting "[o]f course, in many instances the district in which petitioners are held will be the most convenient forum for the litigation of their claims" and based its finding in part on the fact that the respondent had been properly served in the district in which the petition was filed. *Id.*

Initially, the Court notes that this case presents a quite different procedural posture from *Braden*, in which a petitioner confined in Alabama was allowed to proceed with a habeas corpus petition in Kentucky that challenged his right to a speedy trial on a Kentucky charge after the Court found that the matter centered around a detainer lodged by the state of Kentucky and that the respondent had been properly served in the Western District of Kentucky. Here, al-Marri is not attacking a detainer lodged by an Illinois court while he is incarcerated in South Carolina or otherwise attacking a form of legal custody that is separate and distinct from his present physical custody. In fact, the Central District of Illinois has no real relationship to his present confinement other than the fact that he was physically present in this District prior to his arrest and at the time that he was taken into military custody after having been declared an enemy combatant. His family is no longer in this District or even in the United States, and his lead counsel that have established a relationship with him through months of representation are located in Newark, New Jersey. His involvement as a criminal defendant in this Court ceased with the dismissal of all charges against him prior to his transfer into military custody, and the fact that he had been a defendant in this Court prior to the time that he was removed from the district is only tangentially related to the circumstances of his present confinement in military custody. There is likewise no indication that any Respondent is physically present within or has been served in the Central District of Illinois, and neither *Braden* nor any Seventh Circuit case known to the Court has addressed or specifically authorized the use of a state's long-arm statute to obtain service as a means of establishing venue in a § 2241 action where the petitioner is confined in another state.

Subsequent to the Supreme Court's decision in *Braden*, the Seventh Circuit has held that "the only court with jurisdiction over [a petition for writ of habeas corpus] is the federal district court where the movant is imprisoned." *United States v. Mittelsteadt*, 790 F.2d 39, 40 (7th Cir.1986). In fact, the Seventh Circuit even cited *Braden* in its subsequent finding that "if a prisoner wants 'out' . . . the proper venue for the habeas corpus proceeding is the district where [the movant] is being held." *Id.,citing Braden*, 93 S.Ct. at 1132; *Mikolon v. United States*, 844 F.2d 456, 461 (7th Cir.1988) (noting that petitioner who was incarcerated in Terre Haute, Indiana, and brought his petition in the United States District Court for the Southern District of Indiana, had satisfied jurisdictional and venue requirements.) The Seventh Circuit recently reaffirmed this view in *Samirah*, where it held that if the petitioner was going to proceed under § 2241, "he must name his custodian as respondent and file the petition in a district court that has jurisdiction over his custodian; otherwise, the district court would lack jurisdiction." 335 F.3d 545, 2003 WL 21507968, at * 5, *citing Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir.2001), *overruled on other grounds by Ashley v. United States*, 266 F.3d 671, 674–75 (7th Cir.2001); *see also, Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir.1996) (finding that if the petitioner is in prison, the warden is the proper respondent); *Hanahan v. Luther*, 760 F.2d 148, 151 (7th Cir.1985). After finding that no custodian was within the district court's territorial limits when the petition was filed, the Court of Appeals concluded that the district court lacked habeas jurisdiction. *Id.*

Granted, neither *Mittelsteadt* nor *Samirah* are closely analogous to the facts of this case. *Mittelsteadt* involved a regular habeas petition challenging a parole determination by a petitioner who had been convicted and was in custody in a federal prison. 790 F.2d at 40–41. *Samirah* involved a petition brought by an alien seeking to compel the INS to allow him to return to the United States. 335 F.3d 545, 2003 WL 21507968, at *1. In fact, the Court is unaware of any case in the Seventh Circuit expressly addressing this type of situation. Rather, the cases appear to either apply the general rule in addressing the normal habeas situation or address a factual situation that is not sufficiently analogous to compel a particular result in this case. However, *Mittelsteadt*, *Samirah*, and the other cases that have been decided in this circuit do indicate that the general rule that habeas petitions are generally to be filed where the petitioner's custodian is located is well-established in the Seventh Circuit.

Under *Braden's* expanded view of habeas jurisdiction, traditional venue doctrines remain fully applicable, as even in rejecting the inflexible jurisdictional rule of *Ahrens*, the Supreme Court nevertheless reaffirmed the result in that case as the proper product of traditional principles of venue. 93 S.Ct. at 1132.

> On the facts of Ahrens itself, for example, petitioners could have challenged their detention by bringing an action in the Eastern District of New York against the federal officials who confined them in that district. No reason is apparent why the District of Columbia would have been a more convenient forum, or why the Government should have undertaken the burden of transporting 120 detainees to a hearing in the District of Columbia. Under these circumstances, traditional principles of venue would have mandated the bringing of the action in the Eastern District of New York, rather than the District of Columbia.

93 S.Ct. at 1132. The Court finds this to be instructive.

Here, there is no secret as to where al-Marri is being held or that he is being held in military custody in Charleston, South Carolina, which is within the continental United States. He no longer has substantial ties to the Central District of Illinois, as his family is believed to have left the country, and his lead counsel are located in New Jersey. Under these circumstances, the question then becomes whether there is anything about this case that compels the Court to depart from the general rule and allow the petition to be entertained in a district where neither the petitioner, nor his family, nor lead counsel, nor any Respondent is located. Somewhat regretfully, the Court must conclude that the answer is no.

Al–Marri resists transfer to the District of South Carolina, where he asserts that "it appears, meaningful relief will almost certainly be foreclosed" and cites *Hamdi v. Rumsfeld*, 316 F.3d 450 (4th Cir.2003).[2] However, the fact that the Fourth Circuit has denied relief in the case of another petitioner that has been designated as an enemy combatant really has no bearing on the question of venue in this case and presumes without any appreciable basis therefore that the Fourth Circuit would not give al-Marri's petition (which differs in several material respects from the situation in *Hamdi* ) independent consideration. Whether the law of another forum may be more or less favorable cannot be determinative of venue, or the habeas inquiry would be reduced to little more than forum shopping for a better outcome.

Al–Marri argues that his choice of forum. "must be accorded substantial deference." While the Court would generally agree with that assertion if this were a routine civil case, this is a habeas corpus proceed-

ing, and it is axiomatic that not all general principles of civil law apply, for obvious reasons. Al–Marri has not provided, and the Court is otherwise unaware of, any support for the extension of this concept to the realm of habeas corpus proceedings as justification for defeating well-established principles of venue in habeas cases compelling another result.

Al–Marri attempts to persuade the Court to follow the reasoning of *Padilla v. Rumsfeld*, 233 F.Supp.2d 564 (S.D.N.Y. 2002), in which the district court heard the petition in New York and declined to transfer the case to South Carolina, where Padilla was being confined. However, this portion of the non-binding opinion in *Padilla* is extremely brief and can be readily distinguished on several bases, not the least of which is the fact that Padilla's counsel, who had been working to obtain his release prior to his transfer to South Carolina, were located in New York. *Id.* at 587. It is clear from the opinion that the district judge in that case considered this to be a key fact, as he stated that "the convenience of counsel is served by keeping the case here" and reiterated that "considerations of convenience and practicality ... are served by keeping the case here." *Id.* Here, the counsel with whom al-Marri has an established relationship are located in New Jersey, and it is presumably just as convenient, if not more so, for them to travel to South Carolina.

Al–Marri also contends that the material events charged in the indictment which led to his designation by President Bush as an enemy combatant took place in this district and that records/witnesses pertinent to the claim are likely to be found here. However, this is primarily speculation. Although it

---

2. Parenthetically, the Court notes that the timing of the events that unfolded on the morning that the criminal charges in this district were dismissed, al-Marri's immediate turn-over to military custody, and his swift transport from this district to South Carolina suggest that the Government may have been conscious of forum issues as well.

appears that al-Marri resided in Peoria for a substantial part of the time that he was in this country, there was a lengthy period of time between the time he obtained his bachelor's degree and his return on September 10, 2001, when he was not in the United States. The Court has no basis for determining whether the facts upon which he has been designated an enemy combatant center upon conduct that al-Marri allegedly engaged in while inside or outside of the country, or both. Although the Court's inability to make this determination is attributable to the fact that the Government has not divulged the specific details underlying the decision to designate him as an enemy combatant, this does not entitle al-Marri to the inference he asks the Court to draw.

After careful review and scrupulous consideration, the Court concludes that there is nothing about this situation or the relief al-Marri requests that causes the Court to deviate from traditional principles of venue in habeas cases. This is not a situation where the petitioner's whereabouts are unknown or where he is being held outside the confines of the United States. Al–Marri is being held in the naval brig in Charleston, South Carolina. There is a district court there. His immediate custodian is there, and the Court has been assured by the Assistant Solicitor General of the United States and the U.S. Attorney for this district that Commander Marr would obey any court order directed to her for execution.

Nor is there anything about al-Marri's claims or relief sought that compels venue in the Central District of Illinois. His argument that he is being held unconstitutionally centers on his confinement in South Carolina. His request for a declaration that the President's designation of him as an enemy combatant and the Military Order of November 13, 2001, are invalid and void involves a challenge to ac-

tions taken in the District of Columbia, does nothing to tie venue to this district, and can be addressed just as easily in South Carolina. Any order directing Secretary Rumsfeld to release him from custody or prohibiting his removal from the United States would be implemented in either the District of Columbia or South Carolina, as he is not in custody in the Central District of Illinois. Al–Marri also seeks a copy of the Petition, access to counsel, access to Qatari consular officers, access to representatives of the International Committee for the Red Cross, conditions of confinement that are not harmful to his mental or physical well being, conditions of confinement that do not deprive him of constitutional rights normally afforded to pretrial detainees such as the right to freely exercise his religion, and a restriction on his being interrogated outside the presence of counsel; these requests presently relate solely to the conditions and circumstances of his confinement in South Carolina and have no relationship whatsoever with the Central District of Illinois.

Despite the fact that none of the relief sought in al-Marri's Petition is directly related to this district, he maintains that he is entitled to seek relief here because the Government's actions in removing him from this district were unseemly. With all due respect, whether his removal from this district was or was not unseemly is not an issue for this Court to resolve. While the Court fully understands why he would like to have his Petition heard in a circuit that has not yet addressed a challenge to the detention of an individual designated as an enemy combatant, al-Marri's hope for a more favorable result in the Seventh Circuit is not enough to justify an exception to the general rule set forth in *Mittelsteadt* that habeas cases should be brought in the district of confinement. After applying traditional principles of venue in habeas

**1010**

cases, the Court concludes that the Central District of Illinois is not the proper venue for this action, and the merits of al-Marri's Petition should not be entertained in this district.

After announcing this conclusion during oral argument on July 28, 2003, the Court asked counsel for al-Marri whether they would prefer to have the Petition dismissed without prejudice in order to facilitate an immediate appeal or have the Petition transferred to the District of South Carolina. As counsel has now informed the Court that they prefer dismissal, the Court finds that al-Marri's petition shall be dismissed without prejudice.

### CONCLUSION

For the reasons set forth herein, the Government's Motion to Dismiss [# 7] is GRANTED, and al-Marri's Petition for Writ of Habeas Corpus pursuant to § 2241 is DISMISSED WITHOUT PREJUDICE. All other pending motions are now DENIED AS MOOT, and this matter is TERMINATED.