# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-2178

HANI EL-KHADER,

*Plaintiff-Appellant*,

v.

DONALD MONICA, Interim District Director,
Bureau of Citizenship and Immigration Services,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 984—**Amy J. St. Eve**, *Judge.*

_____

ARGUED NOVEMBER 7, 2003—DECIDED APRIL 29, 2004

_____

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* On November 1, 2002, the
Immigration and Naturalization Service ("INS")[1] issued

---

[1] Effective March 1, 2003, the Immigration and Naturalization
Service ceased to exist. The Service's functions relating to adju-
dication of immigrant visa petitions were transferred to the jur-
isdiction of the Director of the Bureau of Citizenship and Immi-
(continued...)

a decision revoking a previously approved visa petition, which had been filed by Hani El-Khader's employer on his behalf, on the basis that El-Khader's former marriage was a "sham," in violation of 8 U.S.C. § 1154(c).[2] El-Khader immediately filed a complaint in the district court seeking review of the INS's final decision, but the district court dismissed the action by ruling that it lacked subject matter jurisdiction over his claim under section 242(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1252(a)(2)(B)(ii).[3] El-Khader appeals, challenging the district court's ruling granting the INS's motion to dismiss for lack of subject matter jurisdiction. We conclude, consonant with our recent decision in *Samirah v. O'Connell*, 335 F.3d 545 (7th Cir. 2003), *petition for reh'g en banc*

---

(...continued)

gration Services ("BCIS"), a newly created division of the Department of Homeland Security. Homeland Security Act, Pub. L. 107-296, Title IV, Subtitle E, section 451; 116 Stat. 2135, 2195 (Nov. 25, 2002).

[2]  8 U.S.C. § 1154(c) provides:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

[3]  Section 1252(a)(2)(B)(ii) provides, in its relevant portions:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of [asylum].

*denied*, *petition for cert. filed* (U.S. Jan. 27, 2004) (No. 03-1085), that "[section] 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings." *Id.* at 549. We also hold that the revocation of a previously approved visa petition under 8 U.S.C. § 1155 *is a discretionary decision, precluded from judicial review pursuant to § 1252(a)(2)(B)(ii)*. We affirm.

## I.  BACKGROUND

Hani El-Khader, an alien with Jordanian citizenship, legally entered the United States on December 27, 1988, on a non-immigrant student visa. In anticipation of his student visa's expiration upon the completion of his formal education in the United States, El-Khader filed a petition in 1991 requesting political asylum in the United States, which was denied, and in 1995 the INS proceeded to institute deportation proceedings.[4] While these proceedings were pending, El-Khader filed for and was granted a non-immigrant worker visa, and he worked for the employer-sponsor of his visa, Amcore Financial, until December 1997.

On May 9, 1997, El-Khader married Nadia Muna, a United States citizen. According to El-Khader, irreconcilable personal conflicts between the couple led to their divorce on October 27, 1998. During the couple's brief marriage, El-Khader filed an application for adjustment of his immigration status to that of lawful permanent resident concurrent with his then-wife's filing of a Petition for Alien Relative. At the time the couple's husband and wife relationship was terminated by divorce, the INS denied El-Khader's adjustment status application as well as his former wife's pending visa petition.

---

[4] El-Khader had received work permits allowing him to remain in the United States while his asylum application was pending.

On April 1, 1998, Ameritrust Mortgage Corporation, El-Khader's prospective employer, filed an Immigrant Petition for Alien Worker classification on El-Khader's behalf and sought permanent resident status for him pursuant to the INA.[5] On August 18, 1998, the INS approved Ameritrust's petition on behalf of El-Khader. Shortly thereafter, on September 17, 1998, El-Khader filed a new application for permanent resident status, which was premised on the INS's recent acceptance of Ameritrust's approved visa petition for El-Khader's alien worker classification.

In order to process this application, the INS commenced an investigation of El-Khader to assess whether he was qualified for a permanent resident visa. When undertaking this investigation, the agency looked into El-Khader's marriage with Nadia Muna and discovered some problems—namely, that he never cohabited with his former wife, and, thus, they never consummated their marriage, and, further, that they possessed no joint, marital assets. Relying on this information, the INS concluded that El-Khader's marriage to Muna was a sham, undertaken for the purpose of evading immigration laws. *See* 8 U.S.C. § 1154(c). Accordingly, on December 5, 2001, the INS informed Ameritrust of its intent to revoke the approved Immigrant Petition for Alien Worker, stating that, "[a]ccording to the Service's investigation, the marriage between Mr. El-Khader and Ms. Muna was a sham and was entered into for the purpose of procuring an immigration benefit." (R.1.) On May 14, 2002, Ameritrust and El-Khader responded to the INS's notice of its intent to revoke his visa petition, arguing that his marriage was legitimate. El-Khader maintained that, as an arranged marriage under

---

[5] Section 203(b)(3)(A)(i) of the Immigration and Nationality Act mandates the availability of a number of visas for aliens who qualify as "skilled" and "professional" workers. 8 U.S.C. §§ 1153(b)(3)(A)(i), (ii).

the Islamic faith, it was perfectly proper for the consummation of his marriage to be delayed and for him not to live immediately with his wife. Furthermore, he argued that the marriage was genuine and that his wife was not pressured into filing the immigration petition on his behalf. He offered affidavits from himself, his former wife's parents, his friends, and experts on the Islamic religion testifying to this effect, although no affidavit was presented from his former wife.

On November 1, 2002, the INS issued a decision formally revoking El-Khader's previously approved worker's visa because, based on its review of all the evidence submitted, it found that the plaintiff failed to establish a bona fide commitment to his wife during the entire course of their marriage. In particular, the INS noted that "[e]ven though the marriage was an arranged marriage, Mr. El-Khader failed to establish any commitment to his marital union other than filing for adjustment of status." (R.16.) That same day, the INS also denied his accompanying adjustment of status application on the basis that, once his worker's visa petition was revoked, there existed no basis upon which to adjust his status. The INS's authority to revoke the plaintiff's approved visa petition resides in 8 U.S.C. § 1155, which states that "[t]he Attorney General may, *at any time*, for what he deems to be *good and sufficient cause*, *revoke the approval* of any petition approved by him *under section 1154 of this title*" (emphasis added), including visa petitions provided for under 8 U.S.C. § 1154(b).

El-Khader was prepared for this adverse decision. On the same day that the INS revoked Ameritrust's visa petition and denied El-Khader's adjustment of status petition, he filed a Third Amended Complaint in the district court[6] and,

---

[6] El-Khader had filed three earlier complaints that are not relevant to this appeal on February 8, 2002 (his original Complaint),

(continued...)

thus, decided to forego any administrative appeal of the INS's decision. His complaint sought reversal of the INS's revocation of his approved visa petition. He claimed that the decision was not based on substantial evidence, was arbitrary and capricious, and was otherwise not in accordance with the law. In response, the INS filed a motion to dismiss the complaint based upon, among other reasons, (1) the fact that, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), the district court lacked jurisdiction to review the Attorney General's decision to revoke an approved visa petition, and (2) the plaintiff's failure to exhaust administrative remedies prior to seeking judicial review.

On April 1, 2003, the district court granted the INS motion to dismiss after determining that § 1252(a)(2)(B)(ii) deprived it of subject matter jurisdiction over El-Khader's claim. The court based this ruling on its conclusions that this provision is not limited to the context of removal and deportation proceedings and that *the INS's decision to revoke a visa petition is a discretionary decision*. On April 30, 2003, the plaintiff filed a notice of appeal, seeking review of the INS's decision under the Administrative Procedure Act, 5 U.S.C. § 706.

## II. ANALYSIS

El-Khader challenges the district court's dismissal, arguing that 8 U.S.C. § 1252(a)(2)(B)(ii) applies only in the context of removal and deportation determinations and, in the alternative, that the decision to revoke a previously approved visa petition is not a discretionary decision when the basis for that decision is a finding that a marriage fraud

---

(...continued)
June 7, 2002 (the First Amended Complaint), and September 30, 2002 (the Second Amended Complaint).

has occurred. In addition, he asserts that jurisdiction was proper in the district court because he exhausted all of his mandatory administrative remedies prior to seeking judicial review. We have appellate jurisdiction under 28 U.S.C. § 1291 and review *de novo* the district court's dismissal for want of subject matter jurisdiction. *Fedorca v. Perryman*, 197 F.3d 236, 239 (7th Cir. 1999); *see also Samirah v. O'Connell*, 335 F.3d 545, 548 (7th Cir. 2003); *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002).

Initially, we turn to the issue of whether the district court properly granted the INS's motion to dismiss El-Khader's complaint on the basis that the court was without subject matter jurisdiction over the claim. The district court based its decision on its interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii), which provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of [asylum].

In El-Khader's initial brief with the Court, he advanced the argument that § 1252(a)(2)(B)(ii) applies only in the context of removal and deportation determinations and does not preclude judicial review of the INS's decision to revoke a visa petition. After the filing of El-Khader's initial brief, this Circuit decided *Samirah v. O'Connell*, 335 F.3d 545 (7th Cir. 2003), which addressed this precise argument raised by El-Khader regarding § 1252(a)(2)(B)(ii)'s scope. *Id.* at 548.

*Samirah* involved an alien who filed a habeas corpus petition seeking district court review of the INS's decision to revoke his advance parole pursuant to section 212(d)(5) of the INA, 8 U.S.C. § 1182(d)(5). After the district court ruled that the government must allow the alien to return to

the United States, this Court reversed on the grounds that the district court lacked subject matter jurisdiction over the petition under § 1252(a)(2)(B)(ii). We held that the scope of "§ 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings." *Samirah*, 335 F.3d at 549 (internal quotation marks omitted).[7] Rather, the plain language of § 1252(a)(2)(B)(ii) bars courts *from reviewing any discretionary decisions of the Attorney General made under the authority of sections 1151 through 1378 of Title 8 of the United States Code*, which collectively constitute the subchapter that § 1252(a)(2)(B)(ii) references. *Id.* at 548-49. Only discretionary decisions by the Attorney General to grant asylum under § 1158(a) are expressly excepted from the force and effect of § 1252(a)(2)(B)(ii). *Samirah* also rejected El-Khader's argument that the heading of section 1252, entitled "Judicial review of orders of removal," limited the scope of section 1252 to discretionary determinations made in the context of removal proceedings. *Id.* at 548. While *Samirah* involved the Attorney General's discretion to revoke advance parole pursuant to 8 U.S.C. § 1182(d)(5)(A), we cannot conceive of a material difference (nor has the appellant present us with one), with respect to the issue of § 1252(a)(2)(B)(ii)'s scope, between that provision and the Attorney General's power to revoke a visa petition under 8 U.S.C. § 1155. Just as § 1182(d)(5)(A) is "a provision that is 'specified under' the 'subchapter' mentioned in § 1252(a)(2)(B)(ii)," *Samirah*, 335 F.3d at 548, so too is § 1155.

---

[7] In so holding, we agreed with the decisions of two other circuits that have reached the same conclusion. *Samirah*, 335 F.3d at 549 (citing *CDI Information Servs. Inc. v. Reno*, 278 F.3d 616, 620 (6th Cir. 2002); *Van Dinh v. Reno*, 197 F.3d 427, 434 (10th Cir. 1999); *El-Khader v. Perryman*, 264 F. Supp. 2d 645 (N.D. Ill. 2003); *Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 11 (D.D.C. 2001); *Avramenkov v. INS*, 99 F. Supp. 2d 210, 214 (D. Conn. 2000)).

During oral argument, El-Khader's counsel acknowledged that *Samirah* constitutes binding precedent on the issue of whether section 1252 applies beyond the context of removal and deportation determinations. Nevertheless, counsel goes on to contend that neither the *Samirah* decision nor any other Court of Appeals decision has addressed whether the effective date provision of 8 U.S.C. § 1252(a) limits the applicability of the statute to removal and deportation proceedings. This provision, set forth in § 306(c)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), states that "amendments made by subsections (a) and (b) [which included § 1252(a)(2)(B)(ii)] shall apply to all final orders of deportation or removal and motions to reopen filed on or after the date of the enactment of this Act." Pub.L. 104-208 Div. C, Sept. 30, 1996, 110 Stat. 3009, 546. El-Khader posits that this language mandates that the provisions in section 1252 are related only to removal or deportation proceedings. We are not persuaded.

As counsel for El-Khader noted during oral argument, El-Khader failed to raise any argument in the district court that the effective date provision of the IIRAIRA affects section 1252's scope. Because of the failure to raise the issue, the district judge was denied the benefit of having the argument before it when making its decision. Thus, the argument is deemed to be waived on appeal. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("issues that a claimant fails to raise before the district court are waived on appeal"). In any event, the language of § 306(c)(1), contains no exclusionary language that specifically limits the applicability of § 1252(a) only to deportation and removal proceedings. Thus, the plaintiff's effective-date argument, even if not waived, is without merit.

This Court's decision in *Samirah* controls the issue of the scope of § 1252(a)(2)(B)(ii). Since we agree with *Samirah*'s holding that the scope of § 1252(a)(2)(B)(ii) extends beyond

removal and deportation proceedings, we hold that judicial review of the revocation of a visa petition under 8 U.S.C. § 1155 is precluded, *so long as* that decision is discretionary in nature.

We next turn to the issue of whether the INS's decision to revoke a visa petition previously granted on behalf of El-Khader is a discretionary decision. According to § 1155, "[t]he Attorney General *may*, at any time, for what *he deems to be good and sufficient cause*, revoke the approval of any petition approved by him under section 1154 of this title." 8 U.S.C. § 1155 (emphasis added). The appellant has failed to present us any case law from any Circuit, nor have we located any, that has expressly ruled on whether a decision under § 1155 is discretionary. Nevertheless, in our opinion, the discretionary nature of the decision is apparent from the plain language of the statute. Initially, we cannot help but repeat the actual words employed by the statute, which involve the permissive "may" and a temporal reference to "at any time." This language plainly signifies a discretionary decision. Furthermore, the determination of whether there exists "good and sufficient cause" to revoke a petition approved under § 1154 (including vias petitions) necessarily is highly subjective, and there exist no strict standards for making this determination. *See Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 11-12 (D.D.C. 2001); *accord ANA Int'l, Inc. v. Way*, 242 F. Supp. 2d 906 (D. Or. 2002)

El-Khader argues only that the broad statutory language of § 1155 is limited by INS precedent establishing that revocation of a visa petition is only appropriate when the petition should not have been approved in the first place, which, he contends, is not a discretionary decision. *See Matter of Tawfik*, 20 I. & N. Dec. 166 (BIA 1990); *Matter of Estime*, 19 I. & N. Dec. 450 (BIA 1987). Moreover, he notes that 8 U.S.C. § 1154(c) dictates that "*no petition shall* be approved if" the petitioning alien has previously committed a marriage fraud in an attempt to secure an immigration benefit. El-Khader argues that the INS's decision was not

discretionary because the INS revoked his visa petition based on its finding that he committed a marriage fraud by entering into a marriage for purposes of procuring an immigration benefit. El-Khader contends that this finding nullifies the INS's discretion because the INS is prohibited from issuing a visa petition to anyone who has committed a marriage fraud for immigration purposes.

El-Khader's argument is misguided. It is true that the INS has regulations requiring that there must be "substantial and probative" evidence of marriage fraud to deny a petition on these grounds. *See Ghaly v. INS*, 48 F.3d 1426, 1436 (7th Cir. 1995) (Posner, C.J., concurring) (citing 8 C.F.R. § 204.2(a)(1)(ii)). Nevertheless, these regulations are inapplicable in those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155 *after* a petition for that visa has already been granted. Likewise, the fact that the INS is required to deny petitions to those who have committed marriage fraud for immigration purposes in no way limits the discretionary status of the Attorney General's subsequent revocation under § 1155 of a granted petition that, it turns out, should have never been made in the first instance. No statutory or regulatory mandate exists *requiring* the Attorney General to revoke visas in instances where he finds that marriage fraud had occurred. In fact, we know of no factual predicates for finding "good and sufficient cause" in the context of decisions made under § 1155.

For the foregoing reasons, we reject the plaintiff's contention that the INS's decision to revoke a previously granted visa petition is not a discretionary decision in those circumstances where the revocation is based on the alleged commission of a marriage fraud undertaken for immigration purposes. Instead, we hold that the decision to revoke a previously approved visa petition pursuant to 8 U.S.C. § 1155 is expressly left to the discretion of the Attorney

General.[8] Therefore, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of such decisions.

## III.  CONCLUSION

We agree with the district court's ruling that it lacked jurisdiction to review the Attorney General's discretionary decision to revoke the plaintiff's approved visa petition.[9]

AFFIRMED

---

[8]  We note that our conclusion that the Attorney General's revocation decisions under § 1155 are discretionary is in agreement with decisions from at least two district courts. *See Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 11 (D.D.C. 2001) ("The language [of 8 U.S.C. § 1155] is clear and unambiguous; the Attorney General has discretion to revoke a petition at any time. No per se factual standards exist for the court to review."); *ANA Int'l, Inc. v. Way*, 242 F. Supp. 2d 906 (D. Or. 2002); *cf. Ghaly v. INS*, 48 F.3d 1426, 1430-31 (7th Cir. 1995) (noting that "[w]e review the revocation of an alien visa petition . . . under an abuse of discretion standard"); *Joseph v. Landon*, 679 F.2d 113, 116 (7th Cir. 1982) (same). El-Khader does not cite, nor have we located, any authority to the contrary.

[9]  Because we conclude that § 1252(a)(2)(B)(ii) denies district courts jurisdiction to review a decision made by the Attorney General under the authority of § 1155, which, as we have held, is a discretionary decision, we need not address the INS's alternative argument that El-Khader's failure to pursue and exhaust remedies through an administrative appeal also precludes jurisdiction.

No. 03-2178                                                    13

A true Copy:

   Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*