George E. BULLWINKEL, Petitioner-Appellant,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, and National Transportation Safety Board, Respondents-Appellees.

No. 85–1933.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1985.

Decided March 28, 1986.

---

John T. Allen, Jr., McBride, Baker, & Coles, Chicago, Ill., for petitioner-appellant.

Mardi Ruth Thompson, Office of the Chief Counsel, Washington, D.C., for respondents-appellees.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

George Bullwinkel is appealing an order of the National Transportation Safety Board (NTSB) that granted him partial relief but denied his request for fees and expenses under the Equal Access to Justice Act (EAJA). Bullwinkel asks us to reverse the NTSB on that issue and to review certain underlying procedures of the Federal Aviation Administration (FAA). We affirm the order of the NTSB and decline to undertake the requested review.

## I.

Bullwinkel holds a private pilot certificate, which is a license granted by the FAA that enables him to pilot private aircraft. Pursuant to FAA rules, pilots must hold airman medical certificates in order to exercise the privileges of their pilot certificates. Airman medical certificates are issued in three classes, each issued for a specified period of time. At the expiration of the medical certificate, a pilot must apply for a new medical certificate. Bullwinkel's third-class certificate expired on February 28, 1982.

On March 23, 1982, Bullwinkel applied for a new airman medical certificate. His application revealed that he had been treated for a cardiac arrhythmia and was then taking a medication usually prescribed for patients with coronary disease, and for this reason the FAA-designated physician (referred to as an aviation medical examiner, or AME) did not issue the certificate. Instead, the AME forwarded Bullwinkel's application to the FAA Civil Aeromedical Institute in Oklahoma City. After further evaluation of the application and other medical information transmitted by Bullwinkel's doctor, the Institute preliminarily denied Bullwinkel the certificate, citing as a reason its assumption that Bullwinkel's drug treatment meant that he had coronary disease.

The FAA informed Bullwinkel that he could seek reconsideration of the denial from the Federal Air Surgeon. Bullwinkel did so and provided additional information from his doctor. The Federal Air Surgeon issued a final denial of the airman medical certificate on September 13, 1982, due to evidence that Bullwinkel exhibited mitral valve prolapse syndrome, which is a cause of irregular heartbeats.

Bullwinkel appealed the FAA's denial to the NTSB, pursuant to statute. The NTSB held a hearing before an administrative law judge on February 16, 1984, during which Bullwinkel and the FAA produced expert witness testimony. Cardiologists from each party apparently agreed that if Bullwinkel had mitral valve prolapse syndrome at all, he had only a very minor case. The administrative law judge issued a written decision on September 14, 1984, reversing the FAA's denial. The judge found that since Bullwinkel manifested no other evidence or symptoms of coronary disease, his possible mitral valve prolapse syndrome did

not place him at any greater risk than other males of his age.

After the FAA appealed this decision, the full NTSB reviewed the case and accepted briefs from the parties. In his brief, Bullwinkel not only urged the NTSB to adopt the administrative law judge's conclusions, but also argued that the FAA's procedures were unlawful and arbitrary, and that he was entitled to recover costs and fees under the EAJA. The NTSB issued an opinion and order on April 3, 1985, affirming the administrative law judge's decision. The NTSB rejected Bullwinkel's EAJA claim, however, noting that the EAJA does not apply to proceedings involving the granting or renewing of a license. The NTSB took no action with respect to Bullwinkel's claim that the FAA's procedures were unlawful.

## II.

■ The preliminary issue we face on appeal is whether to grant the FAA's motion to strike Bullwinkel's requests for injunctive relief. The FAA claims that these requests for relief from its allegedly unlawful procedures were improperly included in Bullwinkel's reply brief and were absent from his opening brief, and thus are not properly the subject of this appeal.

We agree with the FAA. Although we conclude from a reading of Bullwinkel's opening brief that the FAA procedures were criticized and challenged, they were discussed in the brief with the object of procuring fees and costs under the EAJA. In his opening brief, then, Bullwinkel failed to request specific relief from these procedures as is mandated by Rule 28(a)(5) of the Federal Rules of Appellate Procedure. His attempt to introduce a request for injunctive relief in his reply brief thus violates our Circuit Rule 9(e) and F.R.App.P. 28(c), which limit reply briefs to responsive material. Although we liberally apply these rules where a request for relief can fairly be inferred from the opening brief, Bullwinkel's brief is not susceptible of this kind of reading.

Moreover, our tendency to apply briefing rules liberally is curtailed in this case because injunctions are extraordinary relief. Even if we were to attempt a "cure" of Bullwinkel's briefing error by allowing the FAA a chance to respond to the reply brief, this court has no record upon which to review the legality of the FAA procedures or the propriety of injunctive relief, since the record below was confined to Bullwinkel's health and the EAJA claim. In short, this court cannot consider Bullwinkel's requests for relief that were raised for the first time in his reply brief.

## III.

The remaining issue is whether the NTSB erred when it denied Bullwinkel fees and costs under the EAJA. We conclude that it did not. The EAJA provides that "[a]n agency that conducts an adversary adjudication shall award to a prevailing party ... fees and other expenses ... unless ... the position of the agency as a party ... was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1). The EAJA, however, expressly excludes from its scope "an adjudication for ... the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C). The position of the NTSB and the FAA, in which we concur, is that the process of obtaining an airman medical certificate is an adjudication for the purpose of granting or renewing a license.

■ The Administrative Procedure Act defines a license as "the whole or part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). That airman medical certificates fall within this category is clear both from regulatory definitions and the FAA's licensing scheme. First, the FAA grants permission to pilot aircraft through the issuance of airman certificates of various types. *See* sections 602(a) and (b) of the Federal Aviation Act, 49 U.S.C. §§ 1422(a) and (b). NTSB definitions provide that " '[a]irman certificate' means any certificate issued by the FAA to an airman and shall include medical certificates required for an airman." 49 C.F.R. § 821.1. Thus, the airman medical certificate is defi-

nitionally "part of an [FAA] certificate ... or other form of permission," and hence a license for purposes of the EAJA.

Second, under the FAA's present scheme, the actual pilot certificate or license is unlimited in duration, while the underlying airman medical certificate has a definite expiration date. *See* 14 C.F.R. § 43.400–.402, 61.83(c). Since a pilot cannot exercise his privileges under a pilot certificate without a current, valid medical certificate, the grant or renewal of a medical certificate is as much a "grant or renewal of a license" as the original issuance of the pilot certificate. The NTSB recognized as much in 1981, when it promulgated rules for handling EAJA cases. Under these rules, the EAJA exclusion for licensing procedures was interpreted and found to apply to proceedings involving denials of airman medical certificates. *See* 49 C.F.R. § 826.3(a).

### IV.

Since the EAJA excludes from its scope the procedures involved here, we affirm the NTSB's decision to deny Bullwinkel his attorney's fees and costs.