# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WESTERN WATERSHEDS PROJECT,
        *Plaintiff-Appellant,*

v.

INTERIOR BOARD OF LAND APPEALS,
BUREAU OF LAND MANAGEMENT,
AND UNITED STATES
DEPARTMENT OF THE INTERIOR,
        *Defendants-Appellees.*

No. 09-35708

D.C. No.
4:07-cv-00498-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
September 1, 2010—Seattle, Washington

Filed October 12, 2010

Before: Michael Daly Hawkins and M. Margaret McKeown,
Circuit Judges, and Thomas J. Whelan,
Senior District Judge.*

Opinion by Judge Hawkins

---

*The Honorable Thomas J. Whelan, Senior United States District Judge
for the Southern District of California, sitting by designation.

17027

**COUNSEL**

Todd C. Tucci, Advocates for the West, Boise, Idaho, for the plaintiff-appellant.

Syrena C. Hargrove, Assistant United States Attorney, Boise, Idaho, for the defendants-appellees.

## OPINION

HAWKINS, Senior Circuit Judge:

In this appeal, which involves the interplay between the issuance or renewal of Bureau of Land Management ("BLM") grazing permits and the fee-shifting provisions of the Equal Access to Justice Act ("EAJA"), Western Watersheds Project ("Western Watersheds") appeals the summary judgment determination that EAJA fees were not available to Western Watersheds because its environmental claims were brought in a grazing permit renewal proceeding. We agree with the district court's reasoning and affirm.

## I. Background

### A. Statutory and Regulatory Framework

#### 1. The Taylor Grazing Act of 1934

The Taylor Grazing Act of 1934 authorizes the Secretary of the Interior to issue federal grazing leases to qualified applicants. 43 U.S.C. § 315m. BLM, an agency within the Department of Interior, implements the Act and, since 1995, has required ranchers grazing cattle on federal land to obtain a grazing permit. 43 C.F.R. § 4140.1(b)(1). BLM also monitors rangeland health (i.e., environmental issues within a given grazing allotment) and, based on its evaluation of a particular allotment, may determine that corrective actions are necessary. *See* 43 C.F.R. § 4180.2(c). These permitting and monitoring functions overlap because permittee actions may affect rangeland health. Accordingly, when a party seeks a new or renewed grazing permit, BLM considers what terms, if any,

are necessary to include in the permit to improve rangeland health. 43 C.F.R. § 4160.1.

To determine the necessary terms, BLM considers the permit against the standards and guidelines for the relevant geographical area, which in turn requires consideration of issues such as water quality and habitat for endangered or threatened species. 43 C.F.R. § 4180.2(d). Once BLM has identified terms for the permit, it issues a Proposed Grazing Decision. 43 C.F.R. § 4160.1. An applicant, permittee, or other interested party may protest this decision. 43 C.F.R. § 4160.2. Absent a protest and reconsideration, the proposed decision becomes a Final Grazing Decision, which an interested party may then appeal. 43 C.F.R. §§ 4160.3, 4.470. If no appeal is taken, or if a decision on appeal affirms an agency decision, the Final Grazing Decision's terms become the terms of the new grazing permit or renewal. 43 C.F.R. § 4130.3-1(a). Thus, agency action results in either the grant or denial of a permit—or its renewal or non-renewal—which includes consideration of rangeland health and provides opportunity for interested parties to object.

### 2. The Equal Access to Justice Act

The EAJA partially waives the sovereign immunity of the United States, allowing an award of attorneys' fees in certain circumstances. In general, "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding," though there are exceptions if "the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1).

Central to this appeal is whether the underlying proceeding falls within the EAJA's definition of "adversary adjudication." In relevant part, "adversary adjudication" means "an

adjudication under section 554 of the Administrative Procedure Act ("APA") in which the position of the United States is represented by counsel or otherwise, *but excludes an adjudication* for the purpose of establishing or fixing a rate or *for the purpose of granting or renewing a license*." 5 U.S.C. § 504(b)(1)(C)(i) (emphasis added). A grazing "permit," such as here, is a "license" for the purpose of this statute. *See* 5 U.S.C. §§ 504(b)(2); 551(8).

## B. Factual History

Western Watersheds is a non-profit, conservation group with a history of litigation success. In 2001, Western Watersheds obtained an injunction against BLM ("the *Hahn* injunction"), requiring BLM to correct environmental degradation caused through BLM's management of public lands in Idaho, including its issuance of grazing permits to cattle ranchers on the Hardtrigger allotment of the Owyhee Resource Area in southwestern Idaho. *See Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 820-21 (9th Cir. 2002), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 380-82 (2008), *as recognized in Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2756-57 (2010).

In response to the *Hahn* injunction, BLM reviewed its grazing management in the Hardtrigger allotment, concluding that livestock grazing was causing violations of applicable minimum rangeland health standards. In April 2005, BLM sought to address this problem by issuing five final decisions renewing amended 10-year grazing permits that included new requirements for rangeland improvements, such as construction of new fences, pipelines, troughs, cattle guards, and other range improvements. BLM supported these decisions with an Environmental Assessment and a Finding of No Significant Impact, pursuant to the National Environmental Protection Act ("NEPA"), *see* 42 U.S.C. §§ 4321-4347.

In May 2005, Western Watersheds filed administrative appeals of each permit, alleging numerous violations of

NEPA and other federal regulations, including claims that BLM failed to examine environmental impacts on sensitive plants and wildlife that would result from the construction of the rangeland improvements prescribed in the renewed permits. An administrative law judge ("ALJ") consolidated the appeals and granted a partial stay. The parties then entered into a Stipulated Settlement Agreement that, once approved, reversed BLM's decisions renewing the permits and enjoined construction of all range developments.

Having succeeded, Western Watersheds moved for fees and costs under the EAJA. The ALJ denied the motion, finding Western Watersheds was not a "prevailing party," an issue disputed in the administrative proceedings but uncontested by the government before the district court.

Western Watersheds appealed to the Interior Board of Land Appeals ("Appeals Board"). The Appeals Board affirmed the ALJ's decision denying fees, though it declined to affirm the reasoning that Western Watersheds was not a prevailing party. Instead, the Appeals Board found the appeal challenged "*renewals* of five 10-year grazing permits on the [Hardtrigger] Allotment" and that it therefore fell "within one of the exceptions to the class of adversary adjudications for which fees are awarded." The Appeals Board deemed the case controlled by *William J. Thoman*, 157 IBLA 95 (2002), in which it had noted that, while not every case involving a license necessarily falls within the EAJA's exception, those adjudications "for the purpose of granting or renewing a license" clearly do. While the Appeals Board accepted that Western Watersheds' motive behind its appeal was to force environmental compliance rather than to dispute a permit it sought for itself, the Appeals Board explained that "appellants' subjective motivation for pursuing an appeal cannot change" the objective character of the underlying proceeding being challenged, which in this case was a grazing permit renewal.

After the Appeals Board denied reconsideration, Western Watersheds filed in the district court pursuant to the APA and

moved for summary judgment, seeking reversal of the Appeals Board's decision. Characterizing the issue as "whether the adjudication was for the purpose of granting or renewing a license so as to preclude attorney fees," the district court found "that the nature of the initial proceedings"—rather than the intent of the party seeking fees—"defines the purpose of the adjudication." Consequently, the district court denied Western Watersheds' motion for summary judgment and affirmed the Appeals Board's decision. This appeal followed.

## II. Standard of Review

The district court's interpretation of the EAJA as well as its denial of summary judgment in an administrative action are reviewed *de novo*. *See Zambrano v. I.N.S.*, 282 F.3d 1145, 1149 (9th Cir. 2002), *amended by* 302 F.3d 909 (9th Cir. 2002); *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1065 (9th Cir. 2004). A final decision of the Appeals Board shall be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Gilmore v. Lujan*, 947 F.2d 1409, 1411 (9th Cir. 1991).

## III. Discussion

[1] The sole issue here is whether Western Watersheds' administrative appeal was an adjudication "for the purpose of granting or renewing a license" and thus excepted from the definition of "adversary adjudication" for which fees are otherwise recoverable under the EAJA.[1]

---

[1]In its brief, Western Watersheds separately argues that BLM was not only renewing a permit, but also modifying and amending an existing permit. However, Western Watersheds abandoned this argument before the district court and failed to explain any unique circumstances that would warrant hearing the claim for the first time on appeal. *See F.T.C. v. Neovi, Inc.*, No. 09-55093, 2010 WL 2365956, at *7 n.7 (9th Cir. June 15, 2010)

The parties offer competing views on how to determine the "purpose" of an adjudication and, correspondingly, the availability of attorneys' fees under the EAJA. The Appeals Board argues that the purpose of an administrative appeal is controlled by the nature of the underlying agency action—in this case, the renewal of grazing permits. Western Watersheds contends that the purpose of its appeal was to enforce federal environmental laws, not to obtain or renew a license for itself. No doubt this was Western Watersheds' motive, and it succeeded in its effort, but this appeal turns on whether the "purpose" described in the license exception to the EAJA reflects the *nature of the underlying proceeding*, or if it can instead reflect a *party's reason for appealing* a permit renewal. Both parties claim that the plain text of the statute is sufficient to resolve the case. We agree, and conclude that the language of the EAJA supports the Appeals Board's interpretation.

### *Language and Context*

**[2]** The statutory language at issue reads as follows:

> " '[A]dversary adjudication' means (i) an adjudication under section 554 of th[e APA] in which the position of the United States is represented by counsel or otherwise, *but excludes an adjudication* for the purpose of establishing or fixing a rate or *for the purpose of granting or renewing a license*." 5 U.S.C. § 504(b)(1)(C)(i) (emphasis added).

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous

---

(noting that "appellate courts will not consider an argument unless it has been raised sufficiently for the trial court to rule on it" (internal citation and quotation marks omitted)). The argument is thus deemed waived, and we refrain from considering whether EAJA fees would be available if the underlying grazing decisions were deemed permit modifications rather than permit renewals.

meaning with regard to the particular dispute in the case," and the "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal quotation marks omitted). Whether statutory language is sufficiently plain or not is "determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* at 341 (internal citations omitted).

**[3]** The most natural reading of the EAJA text favors interpreting the "purpose" of an adjudication to be defined by the objective nature of the agency action in question, rather than the subjective motives of the challenging party. In the absence of statutory language directing otherwise, the purpose of an adjudicative proceeding is presumed to remain the same throughout the duration of its administrative life, regardless of the motives of an interested party challenging the decision on appeal. This presumption is supported by both the plain meaning of the text and its statutory context.

**[4]** Merriam-Webster defines "purpose" as "something set up as an object or end to be attained." *Merriam-Webster's Collegiate Dictionary* 1011 (11th ed. 2004). The more natural reading of whether an adjudication is "for the purpose of granting or renewing a license" looks to what the end result of the adjudication ultimately will be, which in this case is the renewal or non-renewal of a grazing permit. While Western Watersheds may have been inspired to challenge BLM's grazing permit decisions by its interest in enforcing environmental protection laws, it nonetheless pursued its goals within the context of permitting renewal proceedings. Furthermore, because consideration of environmental factors is embedded in BLM's permitting process, a challenge to a grazing permit on environmental grounds still falls naturally within the parameters of an adjudication whose purpose is to grant or deny a permit or permit renewal. *See* 43 C.F.R. §§ 4160.2, 4180.2.

**[5]** Although Western Watersheds insists its objective in bringing the appeal was not to obtain or renew a license for itself, the EAJA nowhere speaks in terms of whether a party is seeking to "obtain" a license, but rather whether the agency is considering a "grant" of a license. 5 U.S.C. § 504(b)(1)(C)(i). Western Watersheds attempts to bolster its argument by inserting a word in the EAJA license exception that is simply not there: "only those administrative adjudications *brought* 'for the purpose of granting or renewing a license.'" That Western Watersheds must insert the term "brought" in order to effect its desired construction of the text illustrates that the plain meaning of the language does not support reading the adjudicative "purpose" from the perspective of the challenging party. The language chosen by Congress to describe the "purpose" of an adjudication refers to the nature of the agency action rather than the individual party's reasons for bringing the appeal.

The specific context of the statute also supports the Appeals Board's reading. When Congress limited the kinds of adjudications for which attorneys' fees are recoverable under the EAJA, it relied on a well-recognized distinction under the APA between applications for a license and adjudications in which an agency seeks "the withdrawal, suspension, revocation, or annulment of a license." 5 U.S.C. § 558(c). Thus, by the time the EAJA was passed, renewals fell into the "licensing" category and not the "modification" category. This longstanding distinction is reflected in the model regulations developed by the Administrative Conference of the United States, tasked by Congress with advising all federal agencies in consistently interpreting and applying the EAJA, and in the Department of the Interior's regulations. *See Implementation of the Equal Access to Justice Act* ("*Implementation Guidelines*"), 46 Fed. Reg. 15,895, 15,896 (Mar. 10, 1981); 43 C.F.R. § 4.603.

The distinction also finds support in the cases cited by the Appeals Board and lends support to the claim that the struc-

ture of the EAJA excludes attorneys' fees recovery when the underlying proceeding is one whose purpose is renewal, rather than modification, of a license. *See Bankers Life & Cas. Co. v. Callaway*, 530 F.2d 625, 634-35 (5th Cir. 1976); *Hamlin Testing Labs., Inc. v. U.S. Atomic Energy Comm'n*, 357 F.2d 632, 638 (6th Cir. 1966). Finally, while we are under no obligation to defer to the Appeals Board's interpretation of the EAJA, *see Amer. Pac. Concrete Pipe Co. v. NLRB*, 788 F.2d 586, 590 (9th Cir. 1986), we note that its conclusion is consistent with the Appeals Board's previous administrative decisions, which similarly rely on this distinction in determining when fees are available.[2]

Western Watersheds, on the other hand, offers no persuasive authority compelling its preferred conclusion. The two cases it cites that interpret the EAJA license exception stand only for the proposition that when a party challenges a

_____

[2]In *William J. Thoman*, the Appeals Board rejected the claim that a party's reason for challenging a BLM grant or renewal of a license affected the "purpose" of the underlying proceeding. 157 IBLA 95, 98-99 (2002). The case involved an appeal by a grazing permit holder, Thoman, from BLM's grant of a crossing permit to his neighbor. Thoman's theory in challenging his neighbor's permit was that BLM's grant of the permit to the neighbor served as a modification of Thoman's own grazing permit because the crossing would damage the available forage on the allotment over which Thoman held a grazing preference. *Id.* at 96. In concluding that fees were unavailable because the underlying proceeding was "for the purpose of granting or renewing a license," irrespective of Thoman's own personal objectives, the Appeals Board explained why a grant or renewal of a permit was excepted from the EAJA, while the "suspension, annulment, withdrawal, limitation, amendment, modification, or conditioning" was not, as follows:

> "The dividing line seems to be between those activities in which the Government is acting in a purely proprietary capacity in deciding whether or not to grant or renew a license affording rights to individuals (in this case denominated as a grazing permit), and those actions subsequently undertaken within the confines of an issued license which may adversely impact upon the enjoyment of rights already conferred by the Government." *Id.* at 105.

renewal or grant of a permit for himself, such a challenge is excepted from EAJA fee shifting. *See Bullwinkel v. U.S. Dep't of Transp.*, 787 F.2d 254, 256-57 (7th Cir. 1986); *Nakamura v. Heinrich*, 17 Ct. Int'l Trade 119, 121 (1993). These cases hardly help Western Watersheds. Demonstrating that a court will find the license exception applicable in these cases does not lead to the conclusion that a court would have ruled differently had a party not seeking the permit for itself (like Western Watersheds, here) been the one to challenge the decision. In fact, it seems the decisions Western Watersheds cites actually looked to the nature of the license or permit itself, not the challenging party's intent. *See Bullwinkel*, 787 F.2d at 256-57; *Nakamura*, 17 Ct. Int'l Trade at 120-21. In other words, Western Watersheds' cases offer little, if any, support for its argument.

### *Purpose and Intent*

It is true that Congress adopted the EAJA "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991). Western Watersheds also correctly points out that the Administrative Conference has interpreted the exceptions to the EAJA narrowly. *See Implementation Guidelines*, 46 Fed. Reg. 15,895, 15,896 (Mar. 10, 1981).[3] Nonetheless, these concerns are not so compelling that they outweigh a competing presumption in favor of construing waivers of sovereign immunity narrowly, particularly when the plain meaning of the statutory text is so clear. *See Ardestani*, 502 U.S. at 137-38.

---

[3]As Western Watersheds points out, the Administrative Conference finalized these model rules in May 1986, and the final rules largely adopted the Administrative Conference's broad interpretation of the EAJA. *See Equal Access to Justice Act: Agency Implementation*, 46 Fed. Reg. 32,900, 32,900-32,915 (June 25, 1981).

**[6]** The EAJA partially waives the sovereign immunity of the United States by creating a limited, precisely-defined class of adjudications in which an award of attorneys' fees is allowed, *see* 5 U.S.C. §§ 504(a)(1), 504(b)(1)(C)(i), 554, and, as with all waivers of sovereign immunity, the EAJA's waiver must be strictly construed. Accepting Western Watersheds' interpretation of the EAJA would not only complicate the implementation of the EAJA from a practical standpoint, in that it would require a reviewing court to examine the subjective intent of each individual party in filing its appeal rather than simply looking to the type of proceeding at issue to determine whether the proceeding is an "adversary adjudication," it could, moreover, open a fairly straightforward loophole in the EAJA's waiver of the sovereign immunity of the United States.

**[7]** Though no one disputes Western Watersheds' environmental motives in the present case, one could easily imagine a scenario in which a permittee uses a third party as a proxy for making his own arguments before the Appeals Board and then seeks fees for that third party—exactly the scenario that the EAJA's license exception seeks to avoid. In affirming the lower court's interpretation of the license exception, we ensure that we do not enlarge Congress' waiver of sovereign immunity beyond what it clearly intended. Because Western Watersheds conceded before the district court that the underlying agency action at issue was a permit renewal proceeding, we also run no risk of expanding the narrow license exception of the EAJA.

### *Legislative History*

Because the text of the statute is clear in light of its plain meaning and context, we refrain from examining the legislative history of the EAJA.

### IV. Conclusion

Because Western Watersheds' commendable efforts to insure environmental compliance occurred within a proceed-

ing Congress excepted from EAJA recovery, we affirm the district court's determination in that regard.

**AFFIRMED.**