**Rashiid ABDUR–RAHMAN,
et al., Plaintiffs,**

v.

**Janet NAPOLITANO, et
al., Defendants.**

**Case No. C09–1269RSM.**

United States District Court,
W.D. Washington,
At Seattle.

June 13, 2012.

Devin T. Theriot–Orr, Robert H. Gibbs, Gibbs Houston Pauw, Seattle, WA, for Plaintiffs.

Melissa Leibman, U.S. Dept. of Justice, Washington, DC, Priscilla To–Yin Chan, U.S. Attorney's Office, Seattle, WA, for Defendants.

## ORDER ON MOTION FOR ATTORNEYS FEES

RICARDO S. MARTINEZ, District Judge.

This matter is before the Court for consideration of plaintiffs' motion for attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). Plaintiffs seek an award of fees as the prevailing parties in this action. Defendants have opposed their motion, arguing that their position throughout this case was substantially justified. After careful consideration of the facts of this case and the relevant case law, the Court has determined that the motion should be granted.

## DISCUSSION

### I. Legal Standard

■ Under the EAJA, the Court "shall award" attorney fees, costs and other expenses to a "prevailing party" in "proceedings for judicial review of agency action, brought by or against the United States," unless "the Court finds that the position of the United States was substantially justi-fied or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The "position of the United States" includes not only the litigation posture taken by the United States in the current civil action, but also the action or failure to act of the agency upon which the civil action is based. *Li v. Keisler,* 505 F.3d 913, 918 (9th Cir.2007) (*citing Singh v. Gonzales,* 502 F.3d 1128, 1129 (9th Cir.2007)).

■ The EAJA partially waives the sovereign immunity of the United States and creates a precisely-defined class of adjudications in which an award of attorney's fees is allowed. *W. Watersheds Project v. Interior Bd. of Land Appeals,* 624 F.3d 983, 989 (9th Cir.2010). Such waiver must be strictly construed. *Id.*

■ For this Court to award attorney's fees and costs under the EAJA, it must find that (1) the parties seeking fees qualify as the "prevailing party;" (2) the government has failed to meet its burden of showing that its positions were substantially justified, or that special circumstances make an award of fees unjust; and (3) the requested fees and costs are reasonable. *United States v. Milner,* 583 F.3d 1174, 1196 (9th Cir.2009) (*citing Perez–Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir.2002)). The plaintiff or plaintiffs must also demonstrate a net worth of less than $2,000,000 at the time the action was filed. 28 U.S.C. § 2412(d)(2)(B)(i). Mr. Adbur–Rahman has submitted a declaration which establishes that he meets this financial requirement. Dkt. # 123.

### II. Analysis

There is no question that plaintiffs are the prevailing party in this action, and the United States has not argued otherwise. Briefly stated, plaintiffs are a family of five, the youngest of whom is a United States citizen. The original complaint in this matter sought injunctive and declaratory relief with respect to Plaintiff Abdur–

Rahman's non-immigrant visa. During the pendency of this action the family traveled to India with approved advance parole documents. While they were in India, action was taken by the Administrative Appeals Office ("AAO") of the United States Customs and Immigration Service ("USCIS") which resulted in the revocation of a previously-approved immigrant worker petition submitted on Mr. Abdul–Rahman's behalf by a previous employer. As a result, the family's advance parole documents were deemed invalid by USCIS, and the non-citizen family members were denied entry into the United States at the airport in Chicago. *See,* Order on Motion for Preliminary Injunction, Dkt. # 72, pp. 3–5. The plaintiffs subsequently prevailed on a motion for preliminary injunction which brought them back to the United States, and then ultimately prevailed in their motion for summary judgment on the merits of their claims. Dkt. ## 72, 112.

The United States argues in opposition to the motion that the fact that "the government lost in the district court cannot raise the presumption that its position was not substantially justified." Defendants' Opposition, Dkt. # 129, p. 4 (citing H.R.Rep. No. 96–1418, at 11 (1980)), 1980 U.S.C.C.A.N. 4984. With regard to the advance parole revocation, defendants assert that

> the government reasonably relied on *Hassan v. Chertoff,* 593 F.3d 785 (9th Cir.2010), in which the Ninth Circuit held that the agency's revocation of advance parole is discretionary as a matter of law and, therefore, not subject to judicial review. *See also Samirah v. O'Connell,* 335 F.3d 545, 547 (7th Cir.

2003)(same). Although the Court ultimately decided to order that Plaintiffs be paroled into the United States for removal proceedings, the government's reliance on controlling decisional authority holding otherwise was appropriate and justified.

Defendants' Opposition, Dkt. # 129, p. 4–5.

It is ironic that defendants point to *Hassan* and the 2003 decision of the Seventh Circuit Court of Appeals in *Samirah* as justification for their actions, particularly the August 30, 2010 denial of entry at the Chicago airport that led to the preliminary injunction motion. This Court relied on the *Samirah* district court's post-remand ruling on the due process aspects of such denial when it granted plaintiffs' motion for a preliminary injunction. Order on Motion for a Preliminary Injunction, Dkt. # 72, p. 14, citing *Samirah v. Mukasey,* 716 F.Supp.2d 734 (N.D.Ill.2008). In the very district where plaintiffs were denied entry at the airport, the district court addressed the due process implications of revocation of advance parole and denial of entry, a full two and a half years before plaintiffs were similarly treated. The agency that denied plaintiffs entry is charged with knowledge of this ruling, and defendants cannot now argue that their disregard of it was "substantially justified."

On December 10, 2010, just months after the denial of entry to plaintiffs, the Seventh Circuit Court of Appeals affirmed the district court in *Samirah* as to all but the specific relief afforded.[1] The appellate court explained that its 2003 decision (to which the Ninth Circuit pointed in *Has-*

---

1. The appellate court found that the district court could not order the government to hold a removal hearing because the government had never tried to remove the plaintiff in that case and "may never try." *Samirah,* 627 F.3d at 664. Instead, the court remanded to the district court with directions to issue a mandamus "commanding the Attorney General to take whatever steps are necessary to enable the plaintiff to re-enter the United States for the limited purpose of reacquiring the status, with respect to his application for adjustment of status, that he enjoyed when he

*san*) had been construed far too broadly by other courts.

> And what if we did word our decision so loosely as to enable an interpretation that has us having resolved issues not before us and extinguished rights (specifically the right to return to the United States *after* revocation of advance parole) and remedies (specifically, mandamus) that were not yet ripe for decision because the litigation had not yet proceeded far enough? Is the plaintiff to be punished because we were imprecise?

*Samirah v. Holder*, 627 F.3d 652, 661 (7th Cir.2010). The court then explained how untenable is the position taken by defendants both in *Samirah* and in these proceedings.

> The government's insistence that a grant of advance parole creates no right of reentry to the United States (or if it does create such a right, no remedy for its violation) comes close to nullifying advance parole; for what applicant for adjustment of status (and thus not yet a lawful resident) would take a chance on leaving the country if he can be denied reentry on an immigration officer's whim? The Attorney General can abolish advance parole if he wants, but he cannot be permitted to make it a trap—a device for luring a nonlawful resident out of the United States so that he can be permanently excluded from this country without any of the procedural protections that he would enjoy if, remaining in the United States, he could be removed only in a removal proceeding.

*Id.* at 662.

The *Samirah* court also rejected the "at the border" arguments made here, noting that "for the purposes of removal an alien

granted advance parole is not deemed to be [an 'arriving alien'] upon his return to the United States." *Id.* at 658 (citing 8 C.F.R. 1.1(q)). Thus, the plaintiffs' inadmissibility "must be determined by an immigration judge, rather than by an immigration officer at a checkpoint or point of entry." *Id.* (Citing 8 U.S.C. § 1229a(a)). Further, as plaintiffs point out, Immigration and Naturalization Service regulations were amended in 1998 to change the regulatory definition of an "arriving alien," to exempt from expedited removal procedure those aliens who return to the United States pursuant to a grant of advance parole that they applied for and obtained while physically present in and prior to their departure from the United States. 63 Fed.Reg. 19382, 19382–19383 (1998).

█ Defendants have not demonstrated that their actions and decisions that led up to the 2010 revocation of advance parole were substantially justified. As set forth more fully in the preliminary injunction Order, a delay in adjudicating 2006 and 2007 I–129 petitions resulted in the denial of the I485 applications for adjustment of status to Lawful Permanent Resident which were filed by the four non-citizen family members in 2007. The parties then entered into a stipulation which reinstated the I485 applications and held matters in abeyance until August 31, 2010. Dkt. ## 23, 25. In spite of this stipulation, three days after the family departed for India with their advance parole documents and assurance they could return to the United States with no ill effects on their status or their applications, the AAO issued a decision revoking the previously-approved immigrant worker petition upon which the I–485 applications were based.[2]

---

left the United States pursuant to the grant of advance parole later revoked." *Id.*

**2.** This decision was based upon a finding that the employer, Wiztech, had lost its corporate

status in 2002. However, Wiztech's corporate status was revived in 2009, before the AAO even considered the issue, and the revival applied retroactively. The Court determined in the summary judgment proceedings

Order, Dkt. # 72, p. 5. Neither plaintiffs nor their counsel received notice of this decision. The revocation of the previously-approved I–140 petition retroactively rendered plaintiffs "out of lawful status" in 2007 when they applied for adjustment of status to Lawful Permanent Resident, and their pending I–485 applications were denied on August 11, 2010. Again, neither plaintiffs nor their counsel received notice. *Id.*, p. 5. As the Court noted previously, retroactively placing plaintiffs in unlawful status impermissibly sanctioned them for behavior that was not deemed unlawful when it occurred, a trap that "is hardly worthy of our great government." *Id.*, p. 13, quoting *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir.1970). The Court cannot find that the government's position on this matter was "substantially justified."

Defendants also contend that special circumstances make an award of fees unjust. They point to this "safety valve" created by Congress under 28 U.S.C. § 2412(d)(1)(A) to allow the government to advance "novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts ..." Defendants' Opposition, Dkt. # 129, p. 10–11, citing H.R.Rep. No. 96–1418 at 11 (1980). One need only read the Court's two opinions in these proceedings to conclude that the agency's enforcement efforts here were not only overly "vigorous" but misplaced, leading ultimately to a denial of due process. The Court accordingly finds no special circumstances which would make an award of fees unjust.

### III. Amount of Award

Plaintiffs have requested an award of $87,769.37 for fees and expenses, including the fees and expenses for preparing the reply. This amount accrues from 244.67 hours of work by associate Devin Theriot–

Orr, who did the bulk of the work in this case on the two motions on which plaintiffs prevailed; plus 37.95 hours of work by the firm's partners, 12.32 hours of work by "miscellaneous attorneys," 36.22 hours of work by the firm's paralegals, and expenses of $2118.82; plus fees and expenses for preparing the reply in the amount of $1625.15. Mr. Theriot–Orr billed at rates from $225 to $275 per hour during the course of this litigation, the partners billed at a rate of $400 to $450 per hour, and the paralegals' time was billed at $130 to $135. Declaration of Devin Theriot–Orr, Dkt. # 120; Declaration of Robert Gibbs, Dkt. # 121; Supplemental Declaration of Devin Theriot–Orr, Dkt. # 131.

■ EAJA provides that fees may be awarded based on prevailing market rates, but not in excess of $125 an hour (plus inflation adjustment) unless the court determines that a special factor, such as limited availability of qualified attorneys, justifies the higher rate. 28 U.S.C. § 2412(d)(2)(A). Defendants argue that plaintiffs have not established that they are entitled to enhanced rates, because expertise in immigration law is of itself not sufficient to justify such an award. Indeed, the standard is that "distinctive knowledge" and "specialized skill" are "needful to the litigation" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir.2009).

■ Plaintiffs have presented sufficient evidence to establish that they possess the distinctive knowledge and specialized skill necessary to achieve success in this complex case, and that such assistance would not have been available at the standard unenhanced EAJA rates. Declarations of Devin Theriot–Orr, Robert Pauw, Robert

that the AAO's decision regarding Wiztech's corporate status was "not in accordance with

the law." Order on Summary Judgment, Dkt. # 112, pp. 9–11.

**1164**

Gibbs, Marc Van Der Hout, Steve Miller, and Deborah Smith, Dkt. ## 120, 121, 122, 124, 125, 126. Plaintiffs' counsel have demonstrated not only that they are experienced and skillful in this area of law, but that they diligently pursued a just result in the face of discouraging events such as the August 30, 2010 denial of entry to the family at the Chicago airport, and their consequent return to India. As the declarants note, time was of the essence, both because the two older children were missing high school, and the job available for Mr. Abdur–Rahman could not be held open indefinitely. Declaration of Deborah Smith, Dkt. # 126; Declaration of Steve Miller, Dkt. # 125. The declaration of Marc Van Der Hout in particular establishes that work of this caliber could not have been obtained at the EAJA statutory rates. Dkt # 124, ¶¶ 10–12.

The Court notes that more than 80% of the hours billed by attorneys in this matter were attributed to the associate Mr. Theriot–Orr, whose billing rate is significantly lower than the partners, whose work constituted 12% of the hours spent. This was an appropriate use of the law firm's resources. The Court also notes that the billing records and declarations do not establish the necessity for the 12.32 hours spent by the "miscellaneous attorneys" who worked on this case, so the fee request shall be denied as to them. The balance of the fees the Court finds appropriate as to time spent and hourly rates, and the Court shall accordingly award fees and expenses as follows:

| | |
|---|---|
| Devin Theriot–Orr | $60,201.75 for 284.67 hours at $225–$275 per hour |
| Partners Pauw and Gibbs | $16,240.00 for 37.85 hours at $400 to $450 per hour |
| Paralegals | $ 5,924.75 for 36.22 hours at $130 to $135 per hour |
| Reply brief | $ 1,620.00 (amount requested is less than actual bills) |
| Expenses | $ 2,123.97 |
| TOTAL AWARD | $86,110.47 |

## CONCLUSION

Plaintiff's motion for attorneys' fees and expenses (Dkt. # 119) is accordingly GRANTED. The Clerk shall enter judgment in favor of plaintiffs in the amount of $86,110.47.